J-S43030-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MA-SA CONSTRUCTION, LLC AND MURAT ASLANSAN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 466 EDA 2024 |
| BENJAMIN TROPP AND JESSICA DONAHUE TROPP | : | |

Appeal from the Order Entered January 10, 2024
In the Court of Common Pleas of Philadelphia County
Civil Division at No:  231000955

BEFORE:  BOWES, J., STABILE, J., and KUNSELMAN, J.

MEMORANDUM BY STABILE, J.:                **FILED MARCH 23, 2026**

Appellee, Benjamin Tropp, filed an arbitration action against Appellants, MA-SA Construction, LLC ("MA-SA") and Murat Aslansan ("Aslansan"), alleging that Appellants breached a contract to renovate a residence that Mr. Tropp owned along with his wife, Jessica Donahue Tropp.  An arbitrator entered an award in favor of Mr. Tropp.  Appellants filed a petition in the Court of Common Pleas of Philadelphia County ("lower court") to vacate or modify the arbitration award under the Revised Statutory Arbitration Act ("RSAA"), 42 Pa.C.S.A. §§ 7321.1-7321.31.  The lower court denied Appellants' petition and entered judgment in favor of Mr. Tropp.  Appellants appealed to this Court.

In an opinion issued on July 17, 2025, we held that Mrs. Tropp was not an indispensable party to this case.  *See* ***MA-SA Construction, LLC v. Tropp***, 343 A.3d 279 (Pa. Super. 2025) ("***MA-SA I***").  In addition, we

remanded this case to the lower court for further proceedings concerning whether Appellants timely filed their petition in the lower court. In doing so, we retained jurisdiction over this appeal. On remand, the lower court found that Appellants' petition was untimely. Having carefully reviewed the record, we now affirm the judgment.

On January 26, 2021, Mr. and Mrs. Tropp entered into an agreement to pay MA-SA $147,000.00 to renovate their home in Philadelphia on or before June 30, 2021. The agreement provided it would "be construed in accordance with and governed by the laws of the State of Pennsylvania." Agreement, 1/26/21, at ¶ 23. The agreement further provided:

> Any controversy or claim arising out of or relating to this Contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules [including the Optional Rules for Emergency Measures of Protection], and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

*Id.* at ¶ 19. Aslansan signed the agreement in his capacity as MA-SA's managing member. *Id.* (signature page).

In March 2022, MA-SA abandoned the project without completing the renovations. The Tropps hired other contractors to complete the project and correct deficiencies in MA-SA's work.

On January 10, 2023, Mr. Tropp (but not Mrs. Tropp) initiated arbitration proceedings against both MA-SA and Aslansan seeking damages of $149,979.96 for completion and correction construction costs. The complaint

filed with the American Arbitration Association ("AAA") is not included in the certified record. The AAA selected Peter Liloia, III as Arbitrator.

Appellants do not dispute that they received proper service of the arbitration complaint. The record reflects that the AAA repeatedly notified Appellants of upcoming arbitration proceedings and hearings via certified mail delivered to Appellants' last known address. Additional notifications were sent to Appellants' acknowledged email addresses that they had given the Tropps during the construction process. The emails included critical details about the arbitration proceedings, response deadlines, and participation instructions.

On May 19, 2023, Appellants failed to appear without explanation at a scheduled arbitration preliminary hearing. The arbitrator held:

> I find that due notice was given by the AAA to [Appellants] of the preliminary hearing and of the arbitration proceedings. Therefore, in accordance with Rule R-32, Arbitration in the Absence of a Party or Representative, of the Commercial Arbitration Rules of the [AAA], the arbitration shall proceed.

Scheduling Order No. 1, 5/23/23.

On July 28, 2023, the arbitration proceeded remotely via the Zoom meeting application. Mr. Tropp, appearing *pro se*, testified and introduced a series of exhibits. Appellants did not participate in the arbitration.

In a decision dated August 31, 2023, the arbitrator found that Appellants "were negligent in their performance and in material breach of contract. They failed to meet the contract time schedule, installed numerous items of work which were not in accordance with the plans and specifications, and

abandoned the project with much work remaining to be completed." Award, 8/31/23, at 2. The arbitrator entered an award in favor of Mr. Tropp and against Appellants in the amount of $149,979.96 for construction and defect correction costs, $536.32 for costs, and AAA fees of $7,185.00, for a total amount of $157,701.28. The arbitrator denied Mr. Tropp's request for punitive damages.

On September 7, 2023, Aslansan emailed a letter to the arbitrator stating, "I am in receipt of the August 31, 2023 Award . . ." Letter, 9/7/23, at 1. Aslansan argued that he was not a party to the agreement with the Tropps, and therefore "the award entered against myself, personally, was in error and the Award should be modified accordingly." *Id.* On September 25, 2023, Aslansan emailed a second letter to the arbitrator raising a similar argument—specifically, that he was not a party to the agreement with Mr. and Mrs. Tropp, and there was no evidence that permitted the arbitrator to pierce MA-SA's corporate veil and find him personally liable. Aslansan's letters referred to MA-SA in passing but did not request that the arbitrator modify the award against MA-SA.

On September 27, 2023, the arbitrator entered a decision denying Aslansan's request for modification of the August 31, 2023 award.

On Monday, October 9, 2023, Appellants filed a "petition to vacate and/or modify" the arbitration award and a supporting memorandum of law in the lower court. Appellants named both Mr. and Mrs. Tropp as respondents

to the petition even though the arbitration award was only entered in favor of Mr. Tropp.

On November 27, 2023, and January 10, 2024, the lower court held hearings relating to Appellants' petition. On January 10, 2024, the lower court denied Appellants' petition and entered judgment in favor of Mr. Tropp in the amount of $157,701.28. On February 6, 2024, Appellants filed a notice of appeal to this Court. Both Appellants and the lower court complied with Pa.R.A.P. 1925.

Appellants raise eight issues in this appeal:

1. Whether the Trial Court abused its discretion and/or erred as a matter of law in confirming the underlying common law arbitration award based on the fact the AAA arbitrator who made said award was not licensed to practice in Pennsylvania and was manifestly ignorant of the application of relevant Pennsylvania contract and construction law principles at issue in this purported Pennsylvania construction contract dispute?

2. Whether the Trial Court abused its discretion and/or erred as a matter of law in confirming the underlying arbitration award given the excessiveness and unconscionability of the award, as well as its facial invalidity?

3. Whether the Trial Court abused its discretion and/or erred as a matter of law in confirming the arbitration award in violation of 42 Pa.C.S.A. §§ 7321.24-25?

4. Whether the Trial Court abused its discretion and/or erred as a matter of law in confirming the arbitration award given Appellants were denied their right to proper notice and opportunity to be heard, the arbitration order was made without jurisdiction, and the arbitrator exceeded the scope of the arbitration agreement, among other patent irregularities of the arbitration?

5. Whether the Trial Court abused its discretion and/or erred as a matter of law in confirming the arbitration award given the evident

- 5 -

partiality and misconduct of the arbitrator and claimant, prejudicing the rights of Appellants?

6. Whether the Trial Court abused its discretion and/or erred as a matter of law in confirming the arbitration award given the Court merely relied upon the text of Pa.C.S.A. §§ 7321.24 and 7321.25, and ignored and/or misapplied the pertinent interpretations of these statutes by the Pennsylvania Superior Court?

7. Whether the Trial Court abused its discretion and/or erred as a matter of law in confirming the arbitration award given Appellee, the arbitrator and AAA failed to adhere to AAA's mandated policies regarding the underlying arbitration?

8. Whether the Trial Court abused its discretion and/or erred as a matter of law in essentially cross-examining Appellant Murat Aslansan at the initial Rule to Show Cause hearing, not permitting him to fully testify regarding concerns pertinent to the Petition, preventing Appellants' counsel to fully examine either Mr. Aslansan or either of the Appellees at the Rule to Show Cause hearings, permitting Appellee additional time to provide unauthenticated evidence to the significant prejudice of Appellants, improperly and only nominally "bifurcating" the issues pertinent to the Petition, and refusing to consider other relevant testimony and evidence material to the Petition?

Appellants' Brief at 3-4.

In **MA-SA I**, we addressed two questions of subject matter jurisdiction. First, we held that Mrs. Tropp was not an indispensable party to this action. **Id.**, 343 A.3d at 284-87.

Next, we analyzed whether Appellants timely appealed the arbitration award to the court of common pleas within the statutory appeal periods prescribed in the RSAA. These statutory appeal periods are jurisdictional in nature. **Id.** at 289; **see also Tarlo v. University of Pittsburgh**, 443 A.2d 879, 880 (Pa. Cmwlth. 1982) ("[t]imeliness of an appeal, whether it is an appeal to an appellate court or a common pleas court, is a jurisdictional

question").[1]  "Where a statute fixes the time within which an appeal may be taken, the time may not be extended as a matter of indulgence or grace." ***Blucas v. Agiovlasitis***, 179 A.3d 520, 525 (Pa. Super. 2018).

The RSAA authorizes two types of appeals to the court of common pleas: a motion to modify or correct the award and a motion to vacate the award. These motions have different statutory deadlines.  A motion to modify or correct must be filed within 90 days after notice of the award.  42 Pa.C.S.A. § 7321.25(a).  A motion to vacate

> must be filed within 30 days after the movant receives notice of the award under section 7321.20 . . . or within 30 days after the movant receives notice of a modified or corrected award under section 7321.21 . . . unless the movant alleges that the award was procured by corruption, fraud or other undue means, in which case the motion must be made within 30 days after the ground is known or by the exercise of reasonable care would have been known by the movant.

42 Pa.C.S.A. § 7321.24(b) (emphasis added).  A movant may consolidate a motion to modify or correct with a motion to vacate.  42 Pa.C.S.A. § 7321.25(c).  The mandatory language of Section 7321.24(b) makes clear, however, that to the extent the consolidated motion seeks *vacatur*, it must be filed within thirty days after notice of the award.  ***See id.*** (motion to vacate

---

[1] "Although decisions of the Commonwealth Court are not binding on this Court, they may provide persuasive authority."  ***Penn Sycamore Apartments Inc. v. Brooks***, 346 A.3d 768, 777 n.8 (Pa. Super. 2025).

"***must be filed*** within 30 days after the movant receives notice of the award")
(emphasis added).[2]

In the present case, Appellants filed a petition in the court of common
pleas to "modify and/or vacate" the arbitration award, thus challenging the
arbitration award under both Sections 7321.24 and 7321.25. The January 10,
2024 order denying the petition, however, failed to decide two issues that
bore upon the timeliness of Appellants' appeal from the arbitration award to
the lower court: (1) whether the issues in Appellants' petition sought *vacatur*
under Section 7321.24 or modification under Section 7321.25, and (2) the
date on which Appellants received notice of the arbitration award.
Accordingly, we remanded this case to the lower court to address these
questions[3] while retaining panel jurisdiction. ***Id.***, 343 A.3d at 291. We
instructed that to the extent that Appellants sought *vacatur*, they timely filed
their petition in the lower court on Monday, October 9, 2023, if Aslansan

_____

[2] The RSAA has one other appeal procedure. Within twenty days after notice
of the arbitration award, a party may (but is not required to) file a motion with
the arbitrator seeking modification or correction of the award. If the arbitrator
modifies or corrects the award, the appeal period to the court of common
pleas begins running when the movant receives notice of the modified or
corrected award. ***See*** 42 Pa.C.S.A. §§ 7321.24(b), 7321.25(a). Aslansan
filed a motion to modify or correct with the arbitrator, but the arbitrator denied
the motion. Since the arbitrator did not modify or correct the award,
Appellants' appeal period began running on the date Appellants received
notice of the award. ***MA-SA I***, 343 A.3d at 289 n.2.

[3] We also ruled that no further proceedings were necessary on the
indispensable party issue in Appellants' petition due to our decision in ***MA-SA
I*** that Mrs. Tropp was not an indispensable party.

received notice of the arbitration award **on** September 7, 2023. *Id.* at 290. On the other hand, their petition was subject to dismissal as untimely if Aslansan received notice **before** September 7, 2023. *Id.* at 291.

On September 8, 2025, the lower court held an evidentiary hearing in compliance with our remand order. On September 30, 2025, the lower court entered a supplemental opinion holding that the issues in Appellants' petition sought *vacatur* alone, thus requiring Appellants to appeal to the lower court within thirty days after receiving notice of the arbitration award. The lower court further found that Appellants' appeal to the lower court was untimely because Appellants received notice of the award via email on September 1, 2023 and regular mail on September 2, 2023, but failed to appeal to the lower court until October 9, 2023, more than thirty days after receiving notice.

The parties have filed supplemental briefs in this Court concerning the lower court's decision, making this appeal ripe for final disposition.

Appellants' petition raised five issues besides the indispensable party issue that we addressed in **MA-SA I**. We conclude that none of these issues sought modification of the arbitration award. Three of the five issues sought *vacatur*, and two were not cognizable as grounds for either *vacatur* or modification.

The RSAA's statute governing *vacatur* of arbitration awards, 42 Pa.C.S.A. § 7321.24, prescribes in relevant part:

> **(a) Grounds.--**Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:

(1)  the award was procured by corruption, fraud or other undue means;

(2)  there was:

>   (i)  evident partiality by an arbitrator appointed as a neutral arbitrator;
>
>   (ii)  corruption by an arbitrator; or
>
>   (iii)  misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;

(3)  an arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy or otherwise conducted the hearing contrary to section 7321.16 (relating to arbitration process), so as to prejudice the rights of a party to the arbitration proceeding;

(4)  an arbitrator exceeded the arbitrator's powers;

(5)  there was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection under section 7321.16(c) not later than the beginning of the arbitration hearing; or

(6)  the arbitration was conducted without proper notice of the initiation of an arbitration as required in section 7321.10 (relating to initiation of arbitration) so as to prejudice substantially the rights of a party to the arbitration proceeding.

42 Pa.C.S.A. § 7321.24(a).  These are the exclusive grounds for vacating an arbitration award under the RSAA.  *Cf. Schwarz v. Wells Fargo Advisors, LLC*, 58 A.3d 1270, 1274 (Pa. Super. 2012) (construing similar statute in Uniform Arbitration Act, 42 Pa.C.S.A. § 7314, to provide "exclusive list of grounds upon which a trial court may vacate an arbitration award"); *see also Mimi Investors, LLC v. Tufano*, —Pa.—, 297 A.3d 1272, 1286 n.21 (2023)

- 10 -

("under the doctrine of expression unius est exclusion alterius, the inclusion of a specific matter in a statute implies the exclusion of other matters") (citation and quotation marks omitted).

The RSAA's statute governing modification of arbitration awards, 42 Pa.C.S.A. § 7321.25, prescribes that the court "shall modify or correct the award if:

> (1) there was an evident mathematical miscalculation or an evident mistake in the description of a person, thing or property referred to in the award;
>
> (2) the arbitrator has made an award on a claim not submitted to the arbitrator and the award may be corrected without affecting the merits of the decision upon the claims submitted; or
>
> (3) the award is imperfect in a matter of form not affecting the merits of the decision on the claims submitted.

42 Pa.C.S.A. § 7321.25(a).

Appellants raised the following arguments in their petition:

> [T]he AAA Arbitration Award is a result of irregularities which have caused an unjust, inequitable or unconscionable award to be issued without jurisdiction and/or is the result of evident partiality by the AAA Arbitrator, and/or the AAA Arbitrator exceeding his Arbitrator's powers such that said Award should be vacated and/or modified pursuant to Pa.C.S.A. Title 42 Section 7341[4] and/or 7321.24, where . . . **(1)** the subject Award for "breach of contract" was entered against a party, Murat Aslansan, who was not even a signatory to said contract; **(2)** no allegation let alone evidence in support of "piercing the corporate veil" was ever raised by Respondent, Benjamin Tropp, to even attempt to allege putative liability against Murat Aslansan, individually for breach of said contract to which he was not a party the underlying breach of

---

[4] 42 Pa.C.S.A. § 7341 does not apply to this case because this statute only governs common law arbitration, not arbitration under the RSAA.

- 11 -

contract claim of Respondent; [**(3)** the indispensable party issue addressed in *MA-SA I*;] **(4)** the Arbitrator failed to acknowledge the bedrock principle in Pennsylvania contract law that punitive damages are not recoverable in breach of contract actions (thereby further illustrating either manifest bias on the part of the Arbitrator or complete misunderstanding of the pertinent law at issue regarding the underlying arbitration); **(5)** Petitioners were not provided proper notice of the underlying arbitration and were thus denied the opportunity to participate and defend themselves therein; and **(6)** the underlying Award of said Arbitrator awarding $150,516.28 in damages based on a purported contract for which the total contract price was $147,000.00 was manifestly inequitable, unconscionable and/or further evidence of arbitrator bias or misunderstanding of basic legal principles pertaining to contractual law in Pennsylvania?

Memorandum In Support Of Petition To Vacate And/Or Modify Arbitration Award, 10/9/23, at 2 (cleaned up; numerals added in bold).

Three of these arguments seek *vacatur* under Section 7321.24. Argument **(1)** contends that Aslansan is not subject to arbitration (or liability) because he is not a party to the agreement with the Tropps and therefore is not subject to the arbitration clause in the agreement. This argument seeks *vacatur* under Section 7321.24(a)(5). *Id.* (party may seek *vacatur* on ground that "there was no agreement to arbitrate"). Argument **(2)**, a corollary to Argument **(1)**, contends that Aslansan is not subject to arbitration (or liability) under the doctrine of corporate veil-piercing. Argument **(2)**, like Argument **(1)**, seeks *vacatur* under Section 7321.24(a)(5). Argument **(5)** contends that Appellants did not receive proper notice of the arbitration, a claim for *vacatur* under Section 7321.24(a)(6) ("the arbitration was conducted without proper notice of the initiation of an arbitration"). Arguments **(4)** and **(6)**, which

- 12 -

contend that the arbitrator misapplied Pennsylvania law, are not cognizable claims for *vacatur* under any of Section 7321.24(a)'s six categories.

None of these arguments seeks modification of the award under Section 7321.25, because none of them alleges any mathematical error, error in form, or mistake in the description of a person, thing or property referred to in the award. Nor does any argument allege that the arbitrator made an award on a claim not submitted to him.

In short, to the extent that Appellants' petition was cognizable under the RSAA, the petition sought *vacatur* alone despite being titled as a petition to "vacate and/or modify". Accordingly, Appellants were required to file their petition within thirty days after "receiv[ing] notice" of the arbitration award. 42 Pa.C.S.A. § 7321.24(b).

The RSAA defines notice as follows:

**(a) Giving notice.--**Except as otherwise provided in this subchapter, a person gives notice to another person by taking action that is reasonably necessary to inform the other person in ordinary course whether or not the other person acquires knowledge of the notice.

**(b) Having notice.--**A person has notice if the person has knowledge of the notice or has received notice.

**(c) Receiving notice.--**A person receives notice when it comes to the person's attention or the notice is delivered at:

(1) the person's place of residence or business; or

(2) another location held out by the person as a place of delivery of such communications.

42 Pa.C.S.A. § 7321.3.

- 13 -

The lower court found that Appellants received notice of the award via email on September 1, 2023, and via regular mail on September 2, 2023, but failed to file their petition until October 9, 2023, more than thirty days later.

The lower court made the following findings concerning Aslansan's receipt of the award in a September 1, 2023, email:

1. Notices of the challenged [AAA] Arbitration Award were duly sent by AAA via email communications, regular and certified mail to all parties on September 1, 2023 in compliance with the [RSAA]. See Respondents (Appellees) Exhibits B-1-7 (part of B-1A); Respondents Supplemental Exhibits R-1 through R-5; and August 31, 2023 AAA Award of Arbitration Petitioners (Appellants) Exhibit 2; See also Notes of Testimony November 27, 2023 pp. 10-14 and September 8, 2025 pp. 32-33, and 60-68.

2. Notices of the August 31, 2023 AAA Arbitration Award, that had been sent by AAA directly to all parties via email communications on September 1, 2023, recited the recipient email address, Maslansan@hotmail.com, for Appellants, MA-SA Construction, LLC, and its Managing Member and sole principal, Murat Aslansan. See Respondents Exhibits B-1-7 (part of B-1A); Respondents Supplemental Exhibits R-1 through R-5 and August 31, 2023 AAA Award of Arbitration Petitioners Exhibit 2.

3. Appellants continually and consistently used the email address, Maslansan@hotmail.com, throughout the construction phase pursuant to the underlying Contract, and in response to the noticed AAA Arbitration Award. See Respondents Exhibits B-1-7 (as part of B-1A), and Respondents Supplemental Exhibits R-1 through-R-5; See Petitioners Exhibit A-1 and A-2; See also N.T. 11/27/2023 pp. 35-42; N.T. 01/10/2024 pp.9-10; and N.T. 09/08/2025 pp. 39, 41, 65-75, 82-83.

4. Appellant Murat Aslansan's broad denials of receipt of email communications at his email address, Maslansan@hotmail.com, from Benjamin Tropp and the AAA during the arbitration and appellate processes, were incredible and unconvincing and contradicted by the multiple referenced and introduced email communication and text messages. See Respondents Exhibits B-

- 14 -

1-7 (part of B-1A); Respondents Exhibit C; Respondents Supplemental Exhibits R-1 through R-5; See also N.T. 01/10/2024 pp. 8-9; and N.T. 09/08/2025 pp. 39-41, 65-75, 82-83.

5. Appellant Murat Aslansan contradicted his denials of receipt of any AAA's emailed communications at his regularly utilized email address, Maslansan@hotmail.com before September 7, 2023, by admit[ing] to his use of the same email address to respond to the arbitration award, to Mr. Tropp's emailed communication on September 24, 2023. See N.T. 9/8/2025 p. 6.

6. Appellant Murat Aslansan contradicted his denials of receipt of any AAA's emailed communications at his regularly utilized email address, Maslansan@hotmail.com, before September 7, 2023, with his utilization of the attachment of an email communication dated July 10, 2023, that had been sent to him by AAA to Mr. Aslansan's responsive emailed correspondence. See N.T. 09/08/2025 pp. 65-66. See also Respondents Supplemental Exhibits R-1 through R-5.

*   *   *

10. Appellant Murat Aslansan confirmed that he had resided at the address of 108 Pine Street, Philadelphia, PA 19106 and had received mail for MASA Construction, LLC at that address during all relevant points of time. See N.T. 11/27/2023 pp. 29 (Sub-Pages 1-3), and 39-41.

*   *   *

16. In response to the AAA Award Notice that had been sent via email and USPS mailing to Appellants by AAA on September 1, 2023, Appellant Murat Aslansan reportedly sent multiple complaining letters[5], each reciting Appellant Murat Aslansan's primary grievance that liability should have been attributed only to the defending entity MASA Construction LLC, and not to him as the sole individual principal of that entity. See Respondents Supplemental Exhibits R-2 and R-5.

*   *   *

---

[5] Aslansan sent these letters on September 14, 2023 and September 25, 2023. ¶¶ 17-21.

- 15 -

22. Each of the two above-referenced undated letters received by AAA as early as September 15, 2023, and purportedly sent via email communications by Murat Aslansan *pro se*, recited the same intended recipient email address that had been utilized by AAA to provide due notices of arbitration proceedings. See Respondents Supplemental Exhibits R-2 and R-5.

23. Appellant Murat Aslansan admitted during his testimony that he had used the same email form of communication with the address of Maslansan@hotmail.com to send all his responsive and rebuttal complaining letters to AAA. See N.T. 09/08/2025 pp. 60-70.

\* \* \*

39. R-51 of the AAA Commercial Arbitration Rules and Mediation Procedures provide for electronic service of Awards recites that parties "shall accept as notice and delivery of the Award or a true copy thereof...[by] electronic service..."

Supplemental Opinion, 9/30/25, at ¶¶ 1-6, 16, 22-23 and 39. The evidence cited by the lower court supports each of these findings.

The lower court further found that Aslansan "admitted that he had received a regular mailed copy of the AAA Arbitration Award notice at his residence of 108 Pine Street, Philadelphia, PA 19106 on September 2, 202[3]."[6] *Id.* at ¶ 12 (citing N.T. 09/08/2025 pp. 62-65). Once again, the evidence cited by the lower court supports this finding.

Because the record supports the lower court's findings, we conclude that Appellants received proper notice of the arbitration award on September 1, 2023, by email at Aslansan's email address, which was a "location held out by

_____

[6] The lower court mistakenly stated that Aslansan received the letter on September 2, 2025. Aslansan's testimony demonstrates that he received the letter on September 2, 2023. N.T., 9/8/25, at 62-63.

[Appellants] as a place of delivery of such communications," 42 Pa.C.S.A. § 7321.3(c)(2), and by regular mail on September 2, 2023 at Aslansan's "place of residence or business," 42 Pa.C.S.A. § 7321.3(c)(1). Since Aslansan received notice of the award before September 7, 2023, Appellants' appeal to the lower court was untimely, and the lower court lacked jurisdiction over the appeal.

Appellants argue at length in their supplemental brief that the arbitration award is a nullity against Aslansan, because he was not a party to the arbitration agreement and therefore the arbitrator lacked jurisdiction to enter an award against him. Appellants overlook the fact, however, that the RSAA requires a party such as Aslansan to raise the claim that he was not subject to arbitration in a **timely** motion for *vacatur*. 42 Pa.C.S.A. § 7321.24(a)(5) & (b). As discussed above, the lower court lacks jurisdiction to decide a motion for *vacatur* that is filed more than thirty days after the aggrieved party receives notice of the award. The lower court found, and we agree, that Appellants filed their petition for *vacatur* more than thirty days after receiving notice of the award. Therefore, the lower court and this Court lack jurisdiction to address Aslansan's argument that he was joined improperly in the arbitration proceedings.

For these reasons, the lower court properly denied Appellants' petition as untimely and entered judgment against Appellants.

Judgment affirmed.

- 17 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 03/23/2026